**UNITED STATES COURT OF INTERNATIONAL TRADE**

| | | |
|---|---|---|
| MIWON SPECIALTY CHEMICAL CO., LTD., Plaintiff, | ) | |
| v. | ) | Court No. 26-03517 |
| UNITED STATES, Defendant. | ) | |

**COMPLAINT**

Pursuant to Rule 3(a)(2) of the Rules of the United States Court of International Trade, Plaintiff, Miwon Specialty Chemical Co., Ltd. (hereinafter, "Plaintiff" or "MSC"), by and through its counsel, alleges and states as follows:

**JURISDICTION**

1. Plaintiff brings this action pursuant to, and in accordance with, section 516A(a)(2)(A)(i)(II) of the Tariff Act of 1930, as amended (codified at 19 U.S.C. § 1516a(a)(2)(A)(i)(II)), contesting certain aspects of the final determination and ensuing antidumping duty order issued by the U.S. Department of Commerce (hereinafter, "Commerce"), International Trade Administration, as it applies to Plaintiff. *See Certain Monomers and Oligomers from the Republic of Korea: Final Affirmative Determination of Sales at Less Than Fair Value and Final Affirmative Determination of Critical Circumstances*, 91 Fed. Reg. 31,415 (Dep't Commerce May 27, 2026) ("*Final Determination*"), and accompanying unpublished Memorandum to Christopher Abbott, Deputy Assistant Secretary for Policy and Negotiations, entitled "Issues and Decision Memorandum for the Final Affirmative Determination in the Less-Than-Fair-Value Investigation of Certain Monomers and Oligomers from the Republic of Korea" (Dep't Commerce May 20, 2026) ("*Decision Memorandum*"); *see also Certain Monomers and*

*Oligomers from the Republic of Korea: Antidumping Duty Order*, 91 Fed. Reg. 47,214 (Dep't Commerce July 28, 2026) ("*Antidumping Duty Order*").

2. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1581(c) and 19 U.S.C. § 1516a(a)(2).

## STANDING

3. Plaintiff is a foreign producer and exporter of subject merchandise and was a mandatory respondent in the antidumping duty investigation that is contested here. Therefore, Plaintiff is an interested party within the meaning of 19 U.S.C. § 1677(9)(A). Plaintiff actively participated in the investigation through the submission of factual information and written arguments and, thus, is a "party to the proceeding" as defined in 19 C.F.R. § 351.102(b). Accordingly, Plaintiff has standing to commence this action pursuant to 19 U.S.C. § 1516a(d) and 28 U.S.C. § 2631(c).

## TIMELINESS

4. The *Final Determination*, which is being challenged herein, was published in the FEDERAL REGISTER on May 27, 2026. *See* 91 Fed. Reg. 31,415. Following an affirmative injury determination by the U.S. International Trade Commission ("USITC"), on July 28, 2026, Commerce published an *Antidumping Duty Order* in the FEDERAL REGISTER. *See* 91 Fed. Reg. 47,214.

5. On August 6, 2026, which was within 30 days after the publication of the *Antidumping Duty Order*, Plaintiff timely filed a Summons to initiate this action. Accordingly, this action commenced within the period specified in 19 U.S.C. §§ 1516a(a)(2)(A)(i)(II) and 1516a(a)(2)(B)(i).

6. This Complaint is timely filed within 30 days after the date of the filing of the Summons. Therefore, this action has been timely brought pursuant to 19 U.S.C. § 1516a(a)(2)(A)(i), 28 U.S.C. § 2636(c), and Rule 3(a)(2) of the Rules of the U.S. Court of International Trade.

**STANDARD OF REVIEW**

7. This Court reviews final determinations issued by Commerce pursuant to 19 U.S.C. § 1673d to determine whether they are "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i).

8. However, the courts have held that "'an agency's finding may be supported by substantial evidence,' yet 'nonetheless reflect arbitrary and capricious action.'" *Changzhou Wujin Fine Chem. Factory Co., Ltd. v. United States,* 701 F.3d 1367, 1377 (Fed. Cir. 2012) (*citing Bowman Transp., Inc. v. Arkansas–Best Freight Sys., Inc.,* 419 U.S. 281, 284, 95 S.Ct. 438, 42 L.Ed.2d 447 (1974)).

**PROCEDURAL HISTORY**

9. On April 16, 2025, Commerce initiated an antidumping duty investigation against certain monomers and oligomers from Korea (and Taiwan) based on a March 27, 2025, petition filed by Arkema Inc. (hereinafter, "Petitioner"). *See Certain Monomers and Oligomers from the Republic of Korea and Taiwan: Initiation of Less-Than-Fair-Value Investigations*, 90 Fed. Reg. 17,044 (Dep't Commerce Apr. 23, 2025). Commerce's period of investigation ("POI") was January 1, 2024, through December 31, 2024. *Id.*

10. On May 22, 2025, Commerce issued a memorandum stating that it had selected MSC and Green Chemical Co., Ltd. (hereinafter, "Green Chemical") as mandatory respondents for the investigation.

11. Between June 2025 and December 2025, MSC submitted timely responses to Commerce's initial antidumping duty questionnaire and several supplemental questionnaires.

12. On December 30, 2025, Commerce issued its preliminary determination in which it calculated a preliminary antidumping duty margin of 10.94 percent *ad valorem* for MSC, 65.72 percent *ad valorem* for Green Chemical, 188.01 percent *ad valorem* for Kukdo Chemical Co. Ltd. (a company that declined to participate in Commerce's investigation), and 15.59 percent *ad valorem* for all other Korean exporters/producers. *See Certain Monomers and Oligomers from the Republic of Korea: Preliminary Affirmative Determination of Sales at Less Than Fair Value, Preliminary Affirmative Determination of Critical Circumstances, in Part, and Postponement of Final Determination, and Extension of Provisional Measures*, 91 Fed. Reg. 244 (Dep't Commerce Jan. 5, 2026) ("*Preliminary Determination")*, and accompanying unpublished Memorandum to Christopher Abbott, Deputy Assistant Secretary for Policy and Negotiations, entitled "Decision Memorandum for the Preliminary Affirmative Determination in the Less-Than-Fair-Value Investigation of Certain Monomers and Oligomers from the Republic of Korea" (Dep't Commerce Dec. 30, 2025).

13. On January 30, 2026, Commerce issued an amendment to its *Preliminary Determination* in which it corrected a "ministerial error" that it committed in its preliminary antidumping duty calculation for MSC, resulting in a revised rate of 25.07 percent *ad valorem* for MSC and, in turn, an amended rate of 28.52 percent *ad valorem* for all other Korean exporters/producers. *See Certain Monomers and Oligomers from the Republic of Korea: Amended Preliminary Affirmative Determination of Sales at Less Than Fair Value*, 91 Fed. Reg. 5,429 (Dep't Commerce Feb. 6, 2026).

14. Following the *Preliminary Determination*, Commerce conducted four separate verifications of MSC and its affiliates: (a) verification of the submitted sales data at MSC's offices in Korea from January 19, 2026, through January 23, 2026; (b) verification of the submitted cost data at MSC's offices in Korea from January 26, 2026, through January 30, 2026; (c) verification of the further manufacturing cost data provided by MSC's U.S. affiliate, Miwon Specialty Chemical USA Inc. (hereinafter, "MUS"), at MUS' facility in Columbia, South Carolina, from February 10, 2026, through February 12, 2026; and (d) verification of the constructed export price ("CEP") sales data provided by MSC's U.S. affiliate, Miwon North America Inc. (hereinafter, "MNA"), at MNA's offices in Exton, Pennsylvania, from February 17, 2026, through February 19, 2026.

15. On April 3, 2026, Commerce issued its verification reports related to its Korean sales verification of MSC and its U.S. sales verification of MNA. On April 10, 2026, Commerce released its verification reports related to its Korean cost verification of MSC and its U.S. further manufacturing cost verification of MUS. Throughout all four verification reports, Commerce found no discrepancies with respect to the sales and cost data submitted by MSC, MNA, and MUS, and did not identify any material concerns about the completeness, accuracy, or integrity of the submitted data and underlying records upon which the sales and cost data derived.

16. On April 14, 2026, MSC and Petitioner submitted affirmative case briefs on sales-related issues. In its affirmative case brief, MSC argued that Commerce should: (a) exclude U.S. sales of further manufactured merchandise from the final antidumping duty calculations; (b) grant a CEP offset to MSC; (c) use a non-financial commercial paper rate from the Federal Reserve to calculate U.S. imputed credit expenses and U.S. inventory carrying costs; (d) exclude U.S. sales of non-subject merchandise from the final margin calculations; (e) not make any

adjustment to MSC's reported rebates to one home market customer; (f) reflect MSC's sales verification minor corrections in the final margin calculations; (g) correct two minor date of sale errors identified in the sales verification reports; (h) accept MSC's reported credit expenses for home market sales; and (i) clarify one drafting error in Commerce's Korea sales verification report concerning its examination of the reported products. Petitioner argued in its case brief that Commerce should: (a) include sales produced in and exported from a third country as part of U.S. sales for margin calculation purposes; (b) adjust home market credit expenses to avoid potential double-counting fore sales by affiliated resellers; and (c) use an alternative field to calculate U.S. indirect selling expenses. On April 23, 2026, MSC and Petitioner submitted rebuttal briefs with respect to sales-related issues.

17. On April 21, 2026, MSC submitted an affirmative case brief on cost-related issues. In this affirmative case brief, MSC argued that Commerce should not make any adjustments to MSC's reported general and administrative ("G&A") expense ratio and that it should make minor clarifications or corrections to certain statements in the Korea cost verification report for MSC and the U.S. further manufacturing cost verification report for MUS. Among these comments, MSC noted that Commerce's *Korea* cost verification report had correctly described the calculation of the common direct labor cost ratio that *MSC* reported, and MSC provided additional context of the function of the labor allocation factor. Petitioner did not file any affirmative case brief on any cost-related issues concerning MSC or MUS. On April 29, 2026, Petitioner filed a rebuttal brief concerning only the G&A expense ratio arguments that MSC raised in its affirmative case brief.

18. On the afternoon of Friday, May 1, 2026, Commerce issued a letter in which it notified MSC that it intended to take the extraordinary step of conducting a follow-up cost

verification on Tuesday, May 5, 2026, and Wednesday, May 6, 2026, at MUS' facility in Columbia, South Carolina. Commerce's letter did not provide any agenda on the procedures to be followed or on any specific packets to prepare in advance. The letter stated only that the purpose of the verification was to speak with *MUS* personnel concerning "the function of the allocation ratio used for conversion costs" based on the comment from MSC's case brief—which, as noted above, was made with respect to *MSC's* direct labor costs incurred in Korea, *not* with respect to MUS' further manufacturing costs in the United States.

19. Despite learning about this follow-up verification on Saturday, May 1, 2026, due to the time difference between Washington D.C. and Korea, and thus being afforded only one business day notice, five people traveled internationally from Seoul, Korea (including MSC's counsel) to Columbia, South Carolina to meet Commerce officials. Two Commerce officials attended the verification, which was concluded in one day (i.e., on May 5, 2026). MSC and MUS officials, as well as their outside consultants and counsel, made every effort to cooperate fully and in good faith with Commerce throughout the follow-up verification. Commerce officials never addressed "the function of the allocation ratio used for conversion costs" reported by MSC for its Korean costs of producing the merchandise under investigation as was the stated purpose in Commerce's May 1, 2026, letter. Instead, Commerce officials concerned themselves only with aspects of MUS' recordkeeping and issues concerning Microsoft Excel® "metadata" in MUS's system.

20. On May 13, 2026, Commerce released its second MUS cost verification report in which it levied accusations that certain observations made during the follow-up verification were inconsistent with MUS' assertions during the initial verification of MUS in February 2026.

21. On Friday, May 15, 2026, Commerce issued a memorandum establishing a briefing schedule for cost-related arguments limited to the May 13, 2026, second MUS cost verification report. Under Commerce's briefing schedule, case brief submissions were due by Tuesday, May 19, 2026 (i.e., only two business days allotted), and Commerce explicitly forbid the submission of any rebuttal briefs.

22. Also on May 15, 2026, Commerce placed two additional documents on its administrative record. Both documents noted that they consisted of Commerce's business proprietary information ("BPI") that may not be released under administrative protective order ("APO"). The first document, captioned "Summary," consisted of a short statement (three lines) included entirely in brackets that was released to MSC's counsel but which counsel was prohibited from divulging to MSC under Commerce's APO rules. The second document, captioned "Document," consisted of a document that was withheld from disclosure under APO, meaning that even MSC's counsel was not permitted to view the document or know anything about any of its contents, the source of document, etc.

23. On May 19, 2026, MSC and Petitioner filed affirmative case briefs concerning the May 13, 2026, second MUS cost verification report. As noted above, MSC was not permitted to submit any rebuttal brief.

24. The following day, on May 20, 2026, Commerce conducted a 23-minute public virtual hearing via Microsoft Teams, with participation from legal representatives of MSC and Petitioner and attendance by two MSC company officials from Korea.

25. Also on May 20, 2026—the same date as the public hearing and one day following the submission of the supplemental cost case brief—Commerce issued its *Final Determination* in which it assigned MSC a final antidumping duty margin of 155.42 percent *ad*

*valorem* on the basis of total adverse facts available ("AFA") based on observations made in its second cost verification report concerning MUS' U.S. further manufacturing cost data. *See Final Determination*, 91 Fed. Reg. at 31,416 (Dep't Commerce May 27, 2026). Commerce also assigned this total AFA rate to Kukdo Chemical Co. Ltd. (a non-participating company). *Id.* Commerce calculated a final weighted-average dumping margin of 65.72 percent *ad valorem* for Green Chemical and assigned this same rate to all other Korean producers/exporters. *Id.*

26. The legal bases for Commerce's *Final Determination* were set forth in its unpublished *Decision Memorandum*, dated May 20, 2026.

27. On July 28, 2026, following an affirmative injury determination by the USITC, Commerce published the resulting *Antidumping Duty Order*. *See* 91 Fed. Reg. 47,214.

## ISSUES PRESENTED BY THE ACTION AND PLAINTIFF'S STATEMENT OF CLAIMS

28. In the following respects, and for other reasons apparent from the record of the administrative proceeding, Commerce's *Final Determination* is unsupported by substantial record evidence, arbitrary and capricious, and/or otherwise not in accordance with law.

## COUNT ONE

29. Paragraphs 1 through 28 are incorporated herein by reference.

30. Commerce's determination to apply total AFA to MSC, under 19 U.S.C. § 1677e, was unreasonable, unsupported by substantial record evidence, arbitrary and capricious, and/or otherwise not in accordance with law. Among other things, Commerce unreasonably ignored pertinent evidence regarding the purpose of certain documents that MSC possesses but which did not serve as the source of information forming the basis of the cost data retained in MUS' ERP system and, in turn, the U.S. further manufacturing cost data that Commerce had already verified

as complete and accurate. Furthermore, Commerce observed only that certain documents existed in MUS' offices, but Commerce unreasonably failed to verify whether the documents in question contained information that contradicted MUS' submitted cost data and otherwise ignored MSC's explanations as to the nature and purpose of such documents in MUS' normal course of business.

## COUNT TWO

31. Paragraphs 1 through 30 are incorporated herein by reference.

32. Commerce's decision to conduct a supplemental cost verification of MUS seemingly was motivated by concerns arising after the completion of the initial series of verifications. To the extent Commerce came to believe that certain deficiencies existed with respect to any portions of MSC's or MUS' submitted data or underlying records, Commerce was obligated under 19 U.S.C. § 1677m(d) to inform MSC and allow MSC an opportunity to address and remedy the alleged deficiency prior to verification—which Commerce did not do, instead disregarding MSC's, MUS', and MNA's data in their entirety—further rendering Commerce's determination to be unreasonable, unsupported by substantial evidence, and/or otherwise not in accordance with law.

## COUNT THREE

33. Paragraphs 1 through 32 are incorporated herein by reference

34. Commerce's decision to apply total AFA to MSC as a whole, rather than limiting it to the specific further-manufactured cost data involving MUS that was the focus of Commerce's supplemental verification, was unreasonable, unsupported by substantial evidence, arbitrary and capricious, and/or otherwise not in accordance with law, as Commerce failed to explain why any perceived deficiency concerning only MUS' further manufacturing cost data

justified the total rejection of MSC's and MNA's otherwise complete, accurate, and fully verified sales and cost information.

35. Furthermore, Commerce's assignment of the petition rate of 155.42 percent *ad valorem* as the basis for the total AFA rate applied to MSC was unreasonable, unsupported by substantial evidence, and/or not in accordance with law.

**COUNT FOUR**

36. Paragraphs 1 through 35 are incorporated herein by reference.

37. Commerce's determination to conduct a supplemental verification of MUS with one business day notice, no discussion with MSC's counsel regarding scheduling and logistics, no agenda provided in advance, and with a disingenuous explanation of the stated purpose for conducting the follow-up verification, was unreasonable, unsupported by substantial evidence, an abuse of discretion, and/or otherwise not in accordance with law, including, *inter alia*, a violation of MSC's procedural due process rights under the Fifth Amendment to the United States Constitution.

38. Likewise, Commerce's determination to allow the submission of a case brief regarding the second MUS cost verification report only one day prior to the *Final Determination* date, with no opportunity for rebuttal briefs, and to conduct a public hearing on the morning of the *Final Determination* date, was unreasonable, unsupported by substantial evidence, arbitrary and capricious, and/or otherwise not in accordance with law, including, *inter alia*, a violation of MSC's procedural due process rights under the Fifth Amendment to the United States Constitution.

39. Likewise, Commerce's determination to withhold certain information in its entirety from MSC and MSC's counsel as not releasable under APO, without any explanation or

demonstration of a "clear and compelling need" to do so—thus depriving MSC and MSC's counsel of knowing critical aspects of the nature and source of accusations being made against MSC and preventing MSC from receiving full and fair representation—was unreasonable, unsupported by substantial evidence, arbitrary and capricious, and/or otherwise not in accordance with law, including, *inter alia*, a violation of MSC's procedural due process rights under the Fifth Amendment to the United States Constitution.

**COUNT FIVE**

40. Paragraphs 1 through 39 are incorporated herein by reference.

41. Commerce failed to make a determination on the issue of whether to exclude U.S. sales of subject merchandise, which MUS further processed in a United States after importation, from the antidumping duty calculations, finding the issue to be moot based on its application of AFA to MSC in the *Final Determination*. Because Commerce's AFA determination was not supported by substantial evidence, was arbitrary and capricious, and/or was otherwise not in accordance with law, Commerce's determination to reject MSC's arguments on this issue likewise was not supported by substantial evidence, was arbitrary and capricious, and/or was not in accordance with law; and it unreasonably and unlawfully ignored substantial evidence on the record supporting the exclusion of such sales from the antidumping duty calculations under the "special rule" set forth at 19 U.S.C. § 1677a(e).

**COUNT SIX**

42. Paragraphs 1 through 41 are incorporated herein by reference.

43. Commerce failed to make a determination on the issue of whether to grant MSC a CEP offset, finding the issue to be moot based on its application of AFA to MSC in the *Final*

*Determination*. Because Commerce's AFA determination was not supported by substantial evidence, was arbitrary and capricious, and/or was otherwise not in accordance with law, Commerce's determination to reject MSC's arguments on this issue likewise was not supported by substantial evidence, was arbitrary and capricious, and/or was not in accordance with law; and it unreasonably ignored substantial qualitative and quantitative evidence on the record supporting MSC's entitlement to a CEP offset.

## COUNT SEVEN

44. Paragraphs 1 through 43 are incorporated herein by reference.

45. Commerce failed to make a determination on the issue of the appropriate short-term interest rate to be used for purposes of calculating MSC's reported U.S. credit and inventory carrying expenses, finding the issue to be moot based on its application of AFA to MSC in the *Final Determination*. Because Commerce's AFA determination was not supported by substantial evidence, was arbitrary and capricious, and/or was otherwise not in accordance with law, Commerce's determination to reject MSC's arguments on this issue likewise was not supported by substantial evidence, was arbitrary and capricious, and/or was not in accordance with law; and it unreasonably ignored substantial evidence on the record supporting the use of the "AA Nonfinancial Commercial Paper" rate as a suitable, market-based surrogate for short-term interest rates for purposes of calculating the imputed U.S. expenses.

## COUNT EIGHT

46. Paragraphs 1 through 45 are incorporated herein by reference.

47. Commerce failed to make a determination on the issue of whether to revise MSC's reported home market credit expenses, finding the issue to be moot based on its

application of AFA to MSC in the *Final Determination*. Because Commerce's AFA determination was not supported by substantial evidence, was arbitrary and capricious, and/or was otherwise not in accordance with law, Commerce's determination to reject MSC's arguments on this issue likewise was not supported by substantial evidence, was arbitrary and capricious, and/or was not in accordance with law; and it unreasonably ignored substantial and verified record evidence establishing that MSC correctly reported its home market credit expenses.

## COUNT NINE

48. Paragraphs 1 through 47 are incorporated herein by reference.

49. Commerce failed to make a determination on the issue of whether to revise MSC's reported rebates for one home market customer, finding the issue to be moot based on its application of AFA to MSC in the *Final Determination*. Because Commerce's AFA determination was unsupported by substantial evidence, was arbitrary and capricious, and/or was otherwise not in accordance with law, Commerce's determination to reject MSC's arguments on this issue likewise was not supported by substantial evidence, was arbitrary and capricious, and/or was not in accordance with law; and it unreasonably ignored substantial and verified record evidence establishing that MSC correctly reported its home market rebates.

## COUNT TEN

50. Paragraphs 1 through 49 are incorporated herein by reference.

51. Commerce failed to make a determination on the issue of whether to incorporate MSC's minor corrections form the sales verification, finding the issue to be moot based on its application of AFA to MSC in the *Final Determination*. Because Commerce's AFA

determination was unsupported by substantial evidence, was arbitrary and capricious, and/or was otherwise not in accordance with law, Commerce's determination to reject MSC's arguments on this issue likewise was not supported by substantial evidence, was arbitrary and capricious, and/or was not in accordance with law; and it unreasonably ignored substantial and verified record evidence establishing the nature of the minor errors to be corrected in the antidumping duty calculations.

**COUNT ELEVEN**

52. Paragraphs 1 through 51 are incorporated herein by reference.

53. Commerce failed to make a determination on the issue of whether to revise MSC's reported dates of sale for one home market sequence number and one U.S. market sequence number, finding the issue to be moot based on its application of AFA to MSC in the *Final Determination*. Because Commerce's AFA determination was unsupported by substantial evidence, was arbitrary and capricious, and/or was otherwise not in accordance with law, Commerce's determination to reject MSC's arguments on this issue likewise was not supported by substantial evidence, was arbitrary and capricious, and/or was not in accordance with law; and it unreasonably ignored substantial and verified record evidence establishing the correct dates of sale for the two sequence numbers in question.

**COUNT TWELVE**

54. Paragraphs 1 through 53 are incorporated herein by reference.

55. Commerce failed to make a determination on the issue of whether to exclude the U.S. sales of non-subject merchandise in the margin calculations, finding the issue to be moot based on its application of AFA to MSC in the *Final Determination*. Because Commerce's AFA

determination was unsupported by substantial evidence, was arbitrary and capricious, and/or was otherwise not in accordance with law, Commerce's determination to reject MSC's arguments on this issue likewise was not supported by substantial evidence, was arbitrary and capricious, and/or was not in accordance with law; and it unreasonably and unlawfully ignored substantial record evidence establishing that the U.S. sales in question pertained to merchandise that fell outside the scope of Commerce's investigation and should be excluded from any antidumping duty calculations.

## COUNT THIRTEEN

56. Paragraphs 1 through 55 are incorporated herein by reference.

57. Commerce failed to make a determination on the issue of whether to reverse all adjustments made in the *Preliminary Determination* to MSC's G&A expense ratio, finding the issue to be moot based on its application of AFA to MSC in the *Final Determination*. Because Commerce's AFA determination was unsupported by substantial evidence, was arbitrary and capricious, and/or was otherwise not in accordance with law, Commerce's determination to reject MSC's arguments on this issue likewise was not supported by substantial evidence, was arbitrary and capricious, and/or was not in accordance with law; and it unreasonably ignored substantial record evidence establishing no revision was warranted to either the numerator or denominator of MSC's G&A expense ratio.

**DEMAND FOR JUDGMENT AND PRAYER FOR RELIEF**

58. For the reasons stated above, Plaintiff respectfully requests that the Court:

(a) enter judgment in Plaintiff's favor;

(b) declare that with respect to the issues raised in this Complaint, Commerce's determinations and all related findings and conclusions are unsupported by substantial evidence on the record, arbitrary and capricious, and/or are otherwise not in accordance with law;

(c) remand these matters to Commerce for redetermination consistent with the Court's opinion, including a calculation of Plaintiff's antidumping duty margin based on the submitted and verified sales and cost data; and

(d) provide such other relief as the Court deems just and proper.

Respectfully submitted,

/s/ Jarrod M. Goldfeder

Jarrod M. Goldfeder
Joo (Adelia) Young Kim

TRADE PACIFIC PLLC
700 Pennsylvania Avenue, SE
Suite 500
Washington, DC 20003
Email: jgoldfeder@tradepacificlaw.com

Dated: September 2, 2026

*Counsel to Plaintiff*